UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
IGAL HARBUZANIYA,

                Plaintiff,

       -against-

FIT FOR BUCKS CORPORATION,

                Defendant.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
23-CV-9155 (NCM) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff commenced this action against Gennadiy Kats ("Kats") and Fit For Bucks Corporation ("FitForBucks" or "Defendant") on December 28, 2023, claiming damages for, *inter alia*, breach of contract and unjust enrichment, stemming from Plaintiff's February 2019 investment in FitForBucks. *See generally* Compl., ECF 1; *see* Mot. for Default J. ("Default Mot."), ECF 25, at 1; *see also* Am. Compl., ECF 11.

Currently pending before the Court is Plaintiff's motion for default judgment, which the Honorable Natasha C. Merle referred to the undersigned Magistrate Judge for a report and recommendation. *See* Clerk's Entry of Default, ECF 21; Default Mot., ECF 25; Feb. 9, 2026 ECF Order Referring Mot. For the reasons set forth below, the Court respectfully recommends that this case be transferred to the Central District of California, and that the motion for default judgment be denied, without prejudice to renew in that district. In the alternative, should the case not be transferred, the Court respectfully recommends that the motion for default judgment be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background

The Court recites the facts as alleged in the amended complaint. *See, e.g., Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *1 (E.D.N.Y. Jan. 6, 2021).

The instant action arises out of a $500,000 investment Plaintiff made in Defendant FitForBucks, a "health and wellness promotion company" that "uses a mobile application to monitor user[s'] physical activity as part of a process of 'earning' discount offers" for health-related products and services. Am. Compl., ECF 11, ¶¶ 9, 11. Plaintiff is a dual citizen of Israel and Russia, residing in Moscow, while Defendant FitForBucks is a Delaware corporation with its principal place of business in California that Plaintiff alleges "has done business in this district." *Id.* ¶¶ 2–3, 7.

As relevant to Plaintiff's breach of contract and unjust enrichment claims,[1] the amended complaint alleges that "[b]etween early 2018 and 2019," Gennadiy Kats — Plaintiff's second cousin and FitForBucks' founder, controlling shareholder, CEO, and chairman of its board of directors — acted on FitForBucks' behalf to solicit $500,000 in investments from Plaintiff. *Id.* ¶¶ 10–11. The investments were consummated in two transactions. *Id.* ¶ 12. One of these was a Simple Agreement for Future Equity ("SAFE") loan agreement (the "SAFE Agreement"), under which Plaintiff provided a $250,000

---

[1] Plaintiff's complaint also alleged violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, violations of Section 25110 of the California Corporations Code, breach of contract, recovery in quantum meruit, and unjust enrichment against both Kats and FitForBucks. *See generally* Compl., ECF 1. Plaintiff's amended complaint terminated Kats as a defendant, but maintained the same claims against FitForBucks. *See generally* Am. Compl., ECF 11. Ultimately, Plaintiff's motion for a default judgment proceeded only on the breach of contract and unjust enrichment claims, not the federal and state securities fraud claims. *See* Default Mot., ECF 25, at 1.

loan to FitForBucks. *Id.* ¶¶ 12, 31. The agreement requires that the value of this loan be converted "into equity upon a liquidity event or repayment upon dissolution of the company." *Id.* ¶¶ 31–32. The executed SAFE Agreement, dated February 11, 2019, is attached to Plaintiff's complaint as Exhibit B. *Id.* ¶ 31; *see* Am. Compl., Ex. B (SAFE Agreement), ECF 11, at ECF pp. 19–24. The SAFE Agreement defines "liquidity event" as "a change of control or an initial public offering," and defines a "dissolution event" as "(i) a voluntary termination of operations, (ii) a general assignment for the benefit of the company's creditors or (iii) any other liquidation, dissolution or winding up of the company (excluding a liquidity event), whether voluntary or involuntary." SAFE Agreement, ECF 11, at ECF p. 21 (capitalization modified) (emphasis omitted). The SAFE Agreement contains a choice-of-law clause stating that "[a]ll rights and obligations hereunder will be governed by the laws of the State of California, without regard to the conflicts of law provisions of such jurisdiction." *Id.* at ECF p. 23.

The other transaction was a "private share sale of $250,000 directly from Kats to Plaintiff." Am. Compl., ECF 11, ¶ 12. Plaintiff offers no further detail about this sale in the Amended Complaint. A copy of a "Stock Purchase Agreement" is attached to the Amended Complaint as Exhibit C. Am. Compl., Ex. C (Stock Purchase Agreement), ECF 11, at ECF pp. 26–28 (capitalization modified). The two-page Stock Purchase Agreement contemplates the sale of 325,000 shares of capital stock in FitForBucks in exchange for $250,000. *Id.* at ECF p. 26. Further, there is a choice-of-law clause indicating that the agreement is governed by Delaware law. *Id.* A boilerplate provision regarding the anticipated close of the transaction, which includes space to fill in dates/locations, notes that the closing "shall be held at [blank], Moscow, Russia on [blank], at [blank], or such other place, date and time as the parties hereto may otherwise agree." *Id.* This exhibit is

3

accompanied by a copy of a "Certificate of Shares," granting Plaintiff 325,000 shares in FitForBucks in exchange for $250,000. *Id.* at ECF pp. 29–30 (capitalization modified).

Plaintiff's amended complaint does not indicate where these contracts were negotiated or executed. *See generally* Am. Compl., ECF 11. The Stock Purchase Agreement indicates that it was "made and entered" on February 11, 2019, between "Gennadiy Kats ('Seller') of 4169 Via Marina, #206, Marina Del Rey, CA, 90292, USA, and Igal Harburzaniya [*sic*] ('Purchaser') of Aleksandra Nevskogo Street, 27, #1, Moscow, Russia." Stock Purchase Agreement, ECF 11, at ECF p. 26 (capitalization modified).

Plaintiff avers that "[t]o induce Plaintiff into these transactions, Kats, acting as an agent of FitForBucks, made material misstatements and omissions to Plaintiff regarding FitForBucks' financial condition, operations, and future prospects." Am. Compl., ECF 11, ¶ 13. Specifically, Kats allegedly told Plaintiff that "FitForBucks had sufficient capitalization and business growth to achieve financial breakeven or an exit event before the operating capital runs out," and that FitForBucks was valued at $10 million. *Id.* ¶¶ 13, 19. Plaintiff alleges that these "representations were materially false and misleading when made, as FitForBucks did not have sufficient capitalization or growth prospects, and its valuation was not supported by any official entity," and that FitForBucks, via Kats, "knew that these representations were false when made, or was reckless in not knowing, given Kats'[s] position as founder, controlling shareholder, CEO, and Chairman of the Board of Directors." *Id.* ¶¶ 20–21.

Plaintiff alleges that, at some unspecified time later, Defendant "breached the SAFE Agreement by failing to notify Plaintiff of liquidity and/or dissolution events which occurred and triggered a repayment requirement of the $250,000 SAFE amount." *Id.* ¶ 33. Plaintiff further alleges that he "conferred a benefit on FitForBucks by investing

$500,000 based on FitForBucks' misrepresentations," that "FitForBucks appreciated and has knowledge of this benefit," and that "FitForBucks has accepted and retained the benefit under such circumstances as to make it inequitable for FitForBucks to retain the benefit without payment of its value." *Id.* ¶¶ 42–44.

## II.  Relevant Procedural History

As mentioned, Plaintiff filed his complaint on December 28, 2023, naming FitForBucks and Kats as defendants. *See generally* Compl., ECF 1. On April 17, 2024, Plaintiff filed an executed summons, indicating that FitForBucks was served via its registered agent for service of process, Business Filings Incorporated, on January 31, 2024, rendering its answer due February 21, 2024. *See* Summons Returned Executed, ECF 6; Aff. of Service, ECF 6-1. From May through September 2024, Plaintiff filed multiple status reports indicating that Plaintiff was unable to effectuate service on Kats and that he intended to initiate default motion practice with respect to FitForBucks. *See* May 9, 2024 Status Report, ECF 7; July 8, 2024 Status Report, ECF 8; Sept. 3, 2024 Status Report, ECF 9. On September 4, 2024, the Court granted Plaintiff leave to file a motion to amend, a motion for alternative service, or other appropriate paperwork by September 25, 2024, and directed Plaintiff to initiate default motion practice against FitForBucks by October 18, 2024. *See* Sept. 4, 2024 ECF Order. Plaintiff filed his amended complaint on November 15, 2024, and, following some delay,[2] summons for

---

[2] Plaintiff's prosecution of this case has been extremely problematic. During the pendency of this litigation, the Court issued no fewer than 13 orders directing Plaintiff to rectify various missed deadlines and procedural deficiencies. *See* Mar. 19, 2024 ECF Order (missed

FitForBucks was issued on December 9, 2024. *See* Summons, ECF 14. On February 1, 2025, Plaintiff filed an affidavit of service indicating that Defendant was served via its registered agent on January 22, 2025, rendering its answer due February 5, 2025. *See* Aff. of Serv., ECF 15-1.

Following further delay, on July 10, 2025, Plaintiff filed a request for a certificate of default, which was entered on July 14, 2025. *See* Req. for Certificate of Default, ECF 20; Clerk's Entry of Default, ECF 21. Throughout the fall of 2025, Plaintiff twice filed requests for a default judgment in a sum certain, both of which the Clerk of Court denied as exceeding the Clerk's authority under Federal Rule of Civil Procedure 55(b)(1) and E.D.N.Y. Local Rule 55.2. *See* Sept. 14, 2025 Req. for Sum Certain Default J., ECF 22; Sept. 26, 2025 ECF Notice; Nov. 3, 2025 Req. for Sum Certain Default J., ECF 23; Nov. 24, 2025 ECF Notice.

---

deadline to file proof of service); Apr. 10, 2024 ECF Order (same); June 25, 2024 ECF Status Report Order (missed deadline to file proof of service or a status report); July 31, 2024 ECF Order (missed deadline to move for alternative means of service); Aug. 16, 2024 ECF Order (same; warning Plaintiff that "continued failure to respond to court orders will result in this Court recommending that Plaintiff's claims be dismissed for failure to prosecute" under Fed. R. Civ. P. 41(b)); Oct. 11, 2024 ECF Order (missed deadline to file amended complaint); Nov. 1, 2024 ECF Final Order to Show Cause (directing Plaintiff to file amended complaint and any needed summons on pain of dismissal); Dec. 12, 2024 ECF Order (directing service of amended complaint); July 7, 2025 ECF Order (directing Plaintiff to file a corrected request for certificate of default); Aug. 15, 2025 ECF Order (setting deadline to file motion for default judgment in "strict compliance with Fed. R. Civ. P. 55 and the E.D.N.Y. Local Rules 55.1 and 55.2"); Oct. 7, 2025 ECF Order (denying Plaintiff's "request for sum certain default judgment" for non-compliance with applicable rules and setting deadline to renew default motion practice); Nov. 26, 2025 ECF Order (setting deadline for final opportunity to renew default motion practice after Clerk of Court denied Plaintiff's second request for a sum certain default judgment); Dec. 22, 2025 ECF Order (scheduling in-person status conference to discuss, *inter alia*, "the basis for the repeated deficiencies in the default motion practice"). The Court even *sua sponte* recommended that the case be dismissed under Rule 41(b), though the recommendation was later withdrawn. R. & R., ECF 16; Pl. Objection, ECF 17; May 6, 2025 ECF Order & Order to Show Cause. Additionally, Judge Merle referred the issue to the Court for a second time after many months of deficient default motion practice. *See* Dec. 17, 2025 ECF Order of Referral.

On November 26, 2025, the Court provided Plaintiff a final opportunity to renew his default motion by December 15, 2025, in "strict compliance with the Federal Rules of Civil Procedure and the E.D.N.Y. Local Rules." Nov. 26, 2025 ECF Order. On December 19, 2025, Plaintiff belatedly filed a motion for an extension of time to file a corrected motion for a default judgment. Mot. for Extension, ECF 24. On December 22, 2025, the Court denied this motion and scheduled a status conference for January 14, 2026, to discuss "the basis for the repeated deficiencies in the default motion practice" and other issues with Plaintiff's papers. Dec. 22, 2025 ECF Order.

At the January 14, 2026 status conference, discussion was held "regarding the Court's concerns as to permitting continued default practice given the procedural history of this case, the sufficiency of the fraud allegations in the amended complaint under Fed. R. Civ. P. 9(b), and whether Plaintiff has established personal jurisdiction over Defendant FitForBucks," as well as whether venue is proper in this District in light of the personal jurisdiction concerns. Jan. 14, 2026 ECF Min. Entry & Order. Plaintiff's counsel represented that he would move for default judgment on only some of his claims. *Id.* The Court directed Plaintiff to renew his motion for default judgment by February 16, 2026, and warned Plaintiff that any renewed motion must identify, with precision, the claims alleged in the amended complaint on which he is proceeding, and the legal authority, facts, and analysis establishing each of the elements of those claims, or else risk a renewed recommendation of dismissal for failure to prosecute. *Id*.

On February 6, 2026, Plaintiff filed his renewed motion for default judgment. Default Mot., ECF 25. On February 9, 2026, Judge Merle referred the motion to the undersigned for a report and recommendation. Feb. 9, 2026 ECF Order Referring Mot.

## DISCUSSION

For the reasons that follow, the Court respectfully recommends that this case be transferred to the Central District of California. The Court further recommends that, in the alternative, Plaintiff's motion for default judgment should be denied on the merits.

## I. Legal Standards

### A. Venue

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see JDH Unlimited Inc. v. APKZ Med. Inc.*, 808 F. Supp. 3d 547, 561 (E.D.N.Y. 2025). District courts may assess whether transfer or dismissal is appropriate *sua sponte. See Chen v. Wang*, 793 F. Supp. 3d 447, 452 (E.D.N.Y. 2025). Because "the functional purpose of 28 U.S.C. § 1406(a) is to eliminate impediments to the timely disposition of cases and controversies on their merits," transfer is appropriate if it is "in the interest of justice" under Section 1406(a). *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Id.* at 1026.

Courts assess whether venue is wrong by conducting "a step-by-step analysis of the general venue statute, 28 U.S.C. § 1391(b)." *Chen*, 793 F. Supp. 3d at 454. First, Section 1391(b)(1) states that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Under Section 1391(c)(2), corporate defendants are "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). Second, Section 1391(b)(2) provides that venue is also proper in "a judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." *Id.* § 1391(b)(2). Third, Section 1391(b)(3) provides, as a fallback option, that "if there is no district in which an action may otherwise be brought" pursuant to Sections 1391(b)(1) or (b)(2), then "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. *Id.* § 1391(b)(3).

If venue is improper under the general venue statute, section 1406(a) "mandates dismissal or transfer of [the] action." *Chen*, 793 F. Supp. 3d at 455. "[C]ourts frequently transfer actions in lieu of entering a dismissal that may create statute of limitations issues" in the interest of justice. *JDH Unlimited Inc.*, 808 F. Supp. 3d at 573; *see Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005) (observing that transfer is favored "when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum" (quotation marks omitted)). On the other hand, courts often "decline[] to transfer cases where . . . transfer would reward the plaintiff's failure to exercise diligence in choosing a forum or the plaintiff's knowing choice of an improper forum." *Powell v. Monarch Recovery Mgmt., Inc.*, No. 15-CV-2162 (MKB), 2016 WL 8711210, at *7 (E.D.N.Y. Jan. 22, 2016) (collecting cases); *see Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394–95 (2d Cir. 1992).

### B. Entry of Default

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after a certificate of default is entered, on the plaintiff's application, the district court may enter a default judgment.

9

Fed. R. Civ. P. 55(a)–(b); *see also* E.D.N.Y. Loc. Civ. R. 55.2(c). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.* ("*Universal Elec.*"), 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[3] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz* ("*Romanowicz*"), 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.*; *see also Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) (observing that, in the default posture, "the allegations in a plaintiff's complaint are deemed admitted"). It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability

---

[3] Plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having carefully reviewed the filings in this case, the Court finds that Plaintiff's motion papers substantially comport with these rules. Specifically, Plaintiff requested a certificate of default in accordance with Local Rule 55.1(a)(1), which was mailed to Defendant FitForBucks at its last known address. *See* Req. for Certificate of Default, ECF 20; Certificate of Serv., ECF 20, at ECF p. 3. Plaintiff also demonstrated that FitForBucks has failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(a)(2). *See* Summons Returned Executed, ECF 6; Aff. of Serv., ECF 15-1; Sherman Decl. ECF 25-2, ¶¶ 5–7; *see also* Sherman Decl., ECF 20-2, ¶¶ 3, 5 (explaining that, at the time service was effectuated on Defendant's "then-registered agent," it was proper, notwithstanding a later determination that that entity ceased to be Defendant's agent for service of process). Plaintiff further demonstrated that Defendant, as a corporation, is not a minor, incompetent, or subject to the Servicemembers Civil Relief Act, 50 U.S.C. § 3931. Sherman Decl., ECF 25-2, ¶¶ 10–11. Finally, Plaintiff has certified the mailing of the default judgment motion and supporting documents to Defendant FitForBucks' last known business address, in accordance with Local Rule 55.2(a)(3). *See id.* ¶¶ 12–13.

on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In reviewing a default motion, courts may consider the complaint and documents incorporated in or integral to the complaint. *See Xiamen ITG Grp. Corp. v. Peace Bird Trading Corp.*, No. 19-CV-6524 (DLI) (ST), 2024 WL 5399245, at *1 n.3 (E.D.N.Y. Aug. 30, 2024) (noting that "courts considering motions for default judgment consider documents attached to, incorporated in, or integral to the complaint according to the same standards applicable for Rule 12(b)(6) motions"), *report and recommendation adopted*, Sept. 26, 2024 ECF Order Adopting R. & R. They may not, however, consider allegations made in other papers or affidavits. *J & J Sports Prods., Inc. v. Boodram*, No. 18-CV-5087 (NGG) (SMG), 2019 WL 4463352, at *3 (E.D.N.Y. Sept. 18, 2019). In other words, "a default does not . . . excuse any defects in the plaintiff's pleading." *Gunawan*, 897 F. Supp. 2d at 83.

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "[p]laintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence and detailed affidavits." *J & J Sports Prods., Inc. v. Ahuachapan Corp.*, 422 F. Supp. 3d 652, 663 (E.D.N.Y. 2019) (citing *CIT Bank, N.A. v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *5 (E.D.N.Y. Sept. 25, 2015); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). In the default

11

posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

## II. Analysis

### A. Personal Jurisdiction & Venue

As a threshold matter, the Court has concerns regarding whether venue and the exercise of personal jurisdiction over Defendant are proper in this action. Because a default judgment rendered by a court lacking jurisdiction over the parties is void, a district court may "first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010); *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011). Indeed, courts should examine the issue when "a plaintiff's submissions clearly show an absence of personal jurisdiction" or "that sustaining personal jurisdiction is highly unlikely." *Kaplan v. Hezbollah*, No. 19-CV-3187 (BMC), 2022 WL 2207263, at *2 (E.D.N.Y. June 21, 2022). Further, when venue is improper, the district court must transfer or dismiss the action. *See Chen*, 793 F. Supp. 3d at 455 (observing that Section 1406(a) "mandates dismissal or transfer" where venue is wrong).

The Court has questioned whether personal jurisdiction and venue are proper in the Eastern District of New York multiple times during the pendency of this litigation. *See* R. & R., ECF 16, at 3, 6 n.1; May 6, 2025 ECF Order & Order to Show Cause (observing that the "amended complaint alleges no facts that would illustrate Defendant's contacts with this forum" and querying "whether a court in California (where Defendant maintains its headquarters) is the more appropriate forum"); *see also* Jan. 14, 2026 ECF Min. Entry & Order (noting that the Court discussed these concerns with Plaintiff's counsel). Plaintiff insists that personal jurisdiction (and therefore, impliedly, venue) is proper here because Defendant "maintained active business

12

partnerships with entities located within the Eastern District of New York," including, specifically, "a commercial partnership with Arthur Murray Dance Studios" ("Arthur Murray"), which Plaintiff asserts has locations within the Eastern District of New York.[4] Resp. to Order to Show Cause ("OTSC Resp."), ECF 18, at 3–4.

    *1. Personal Jurisdiction*

    To assess whether a court may exercise personal jurisdiction over a non-domiciliary defendant, it must engage "in a two-step analysis." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). First, it must determine whether there is a "statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). Then, it must analyze whether "the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012). This requires assessing whether (1) the defendant has sufficient "minimum contacts" with the forum state "to justify the court's exercise of personal jurisdiction," and (2) the exercise of such jurisdiction is "reasonable" — that is, whether it "comports with 'traditional notions of fair play and substantial justice.'" *Chloe*, 616 F.3d at 164 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Reasonableness is evaluated in accordance with the following factors (the "*Asahi*" factors):

---

[4] The Court notes that Plaintiff's assertion that Arthur Murray "maintains multiple locations throughout New York City, including facilities specifically within the Eastern District of New York at 1711 1st Avenue, Manhattan, and 286 5th Avenue, Manhattan," is only partially correct. OTSC Resp., ECF 18, at 4; *see id.*, Ex. A, ECF 18, at ECF p. 10. Manhattan is located within the Southern District of New York, not the Eastern District. *See* 28 U.S.C. § 112. Nevertheless, the Court's independent research identified at least one Arthur Murray location that is, in fact, located in the Eastern District of New York. *See* Arthur Murray Dance Studios, Dance Lessons in Bayside, https://www.arthurmurray.com/studios/bayside/ [https://perma.cc/WBV4-NHKL] (last accessed July 1, 2026) (indicating that a studio is located at 222-15 Northern Boulevard, Bayside NY 11361); *see also Wallace v. New York*, 40 F. Supp. 3d 278, 328 n.43 (E.D.N.Y. 2014) (taking judicial notice of site locations and collecting cases).

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Chloe*, 616 F.3d at 164; *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–14 (1987). Here, the statutory basis for personal jurisdiction is New York's long-arm statute, which allows a court to "exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," if the plaintiff's "cause of action aris[es] from" that "transact[ion]." N.Y. C.P.L.R. § 302(a). Plaintiff contends that Defendant's "website prominently featured Arthur Murray as a business partner, offering 'FREE Intro Personal Session' rewards to FitForBucks application users," and that this "represents purposeful commercial activity designed to serve New York consumers." Mem., ECF 25-1, at 4 (quoting OTSC Resp., Ex. A, ECF 18, at ECF p. 10).

Based on these bare and somewhat conclusory assertions, Plaintiff has not alleged sufficient information for the Court to conclude that this purported partnership in fact resulted in the transaction of "any business within the state," let alone within this district. N.Y. C.P.L.R. § 302(a); *see Gunawan*, 897 F. Supp. 2d at 85–87 (noting that inferring the legal effect of a business relationship "from nothing more than the general description . . . is in tension with both the presumption against default and the purpose of Federal Rule of Civil Procedure 55"). *But cf. Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (observing that "proof of one transaction in New York is sufficient to invoke jurisdiction" (quotation marks omitted)). Even assuming *arguendo* that Defendant's partnership with Arthur Murray resulted in at least one transaction involving FitForBucks in this district, the amended complaint alleges zero facts from

which to infer that Plaintiff's claims arise out of any transactions associated with this partnership, nor are any such claims alleged in response to the Court's order to show cause. N.Y. C.P.L.R. § 302(a); *see generally* Am. Compl., ECF 11; OTSC Resp., ECF 18. As discussed above, Plaintiff's claims derive from a $500,000 investment Plaintiff made in FitForBucks, which was consummated across two agreements executed in February 2019. *See generally* Am. Compl., ECF 11. Plaintiff nowhere indicates that any other transaction, related to the purported Arthur Murray partnership or otherwise connected to this district, was involved in the creation or violation of these agreements. *See generally id.*

For largely the same reasons, the Court is unable to conclude that the exercise of personal jurisdiction would be consistent with due process. *See Chloe*, 616 F.3d at 164–65. To satisfy the minimum contacts test, "a plaintiff must show that its claim arises out of, or relates to, the defendant's contacts with the forum [and that] the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 217 (S.D.N.Y. 2019) (quotation marks omitted). It is possible, again assuming *arguendo* that Defendant had a partnership with Arthur Murray nationwide, that Defendant reasonably contemplated that it could be "haled into court" in a state where Arthur Murray maintains a location — say, for example, because a FitForBucks user seeking to use her "FREE Intro Personal Session" ends up with a recurring credit card charge. *Id.*; Mem., ECF 25-1, at 4 (quotation marks omitted). But that is not the posture of the instant case. Plaintiff's contract-related claims do not "arise[] out of, or relate[] to, the defendant's contacts with the forum." *DoubleLine Capital LP*, 413 F. Supp. 3d at 217 (quotation marks omitted).

15

Moreover, the *Asahi* factors lead the Court to conclude that it would not be reasonable to make FitForBucks defend this action in this forum: Defendant, a Delaware corporation based in California, would necessarily be burdened by defending the case in New York, a state that has basically no interest in adjudicating a case concerning an out-of-state commercial transaction between two non-domiciliaries. *See Asahi*, 480 U.S. at 113–14. Moreover, if Plaintiff's "interest in obtaining convenient and effective relief" is promoted by the exercise of jurisdiction in New York, the reason why is not apparent in his pleadings. *Chloe*, 616 F.3d at 164 (applying the *Asahi* factors).

For these reasons, the Court finds that Plaintiff has "not alleged facts sufficient for the Court to find personal jurisdiction over Defendant[] under the New York state long-arm statute." *Shenzhen Tepei Tech. Co. v. TPARTS, LLC*, No. 23-CV-2656 (FB) (TAM), 2024 WL 3184596, at *3 (E.D.N.Y. June 7, 2024), *report and recommendation adopted*, 2024 WL 3178908 (E.D.N.Y. June 26, 2024). While the lack of personal jurisdiction alone would be an appropriate ground to recommend that Plaintiff's motion for default be denied, *see Sinoying Logistics Pte Ltd.*, 619 F.3d at 213, the Court instead analyzes whether dismissal or transfer is appropriate under Section 1406(a), in the interest of encouraging "timely disposition" of this case on its merits, *Minette*, 997 F.2d at 1027; *see also Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001) (noting that a district court may transfer venue even in the absence of personal jurisdiction over the defendant).

### 2. Venue

As noted above, Section 1406(a) "mandates dismissal or transfer" where venue is improper. *Chen*, 793 F. Supp. 3d at 455. To determine whether venue is improper, courts analyze each provision of the general venue statute against the facts of the case. *See id.*

16

First, Section 1391(b)(1) states that venue is proper in "a judicial district in which [the] defendant resides," which, for a corporate defendant, is "any judicial district" where it is subject to personal jurisdiction. 28 U.S.C. §§ 1391(b)(1), (c)(2). As discussed at length above, Defendant FitForBucks does not appear to be subject to the Court's personal jurisdiction in the Eastern District of New York. Defendant FitForBucks is, however, a Delaware corporation with its principal place of business in the Central District of California.[5] Am. Compl., ECF 11, ¶ 5; *see* SAFE Agreement, ECF 11, at ECF p. 24 (indicating an address for Defendant FitForBucks of 4169 Via Marina, #206, Marina Del Rey, CA 90292); *see also* Sherman Decl., ECF 25-2, ¶ 12 (indicating that FitForBucks' last known business address is the same). Accordingly, because courts in those districts would have general personal jurisdiction over Defendant, venue would be proper there under Section 1391(b)(1). *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021) (observing that a corporation is subject to general jurisdiction in its domicile, *i.e.*, its place of incorporation and principal place of business).

Second, Section 1391(b)(2) provides that venue is also proper in a district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Here, it is unclear where the events or omissions giving rise to the claims — Kats's alleged misrepresentations in the creation and execution of two agreements — took place. *See generally* Am. Compl., ECF 11. The Second Circuit has found that a

---

[5] Plaintiff's pleadings indicate that Defendant's address is 4169 Via Marina, #206, Marina Del Rey, CA 90292. *See* SAFE Agreement, ECF 11, at ECF p. 24 (Defendant FitForBucks' address); Stock Purchase Agreement, ECF 11, at ECF p. 26 (Kats's address); *see also* Sherman Decl., ECF 25-2, ¶ 12. The Court takes judicial notice of the fact that Marina Del Rey is a town in Los Angeles County, which is located within the Central District of California. 28 U.S.C. § 84(c)(2); *Wallace*, 40 F. Supp. 3d at 328 n.43.

substantial part of the events giving rise to a contract dispute can be said to occur in the district to which a party directed their communications during the process of negotiating an agreement. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 153 (2d Cir. 2001) (collecting cases). However, neither the complaint nor the amended complaint alleges where the parties were located when the two underlying agreements were negotiated. Plaintiff resides in Moscow, Russia, while Kats resides in California. Am. Compl., ECF 11, ¶ 2; Compl., ECF 1, ¶ 3. As discussed above, Plaintiff's pleadings reference the Eastern District of New York to assert that personal jurisdiction is proper here, but do "not specify even one event or omission that occurred in this district," nor do they "allege that any 'property that is the subject of the action' is located within this district." *Chen*, 793 F. Supp. 3d at 454 (quoting 28 U.S.C. § 1391(b)(2)). Accordingly, Section 1391(b)(2) does not provide a basis for venue in the Eastern District of New York.

Given that Plaintiff has not established venue in the Eastern District of New York, but there are two other districts where venue would be proper, the Court turns to whether transfer or dismissal is appropriate under Section 1406(a). *See Chen*, 793 F. Supp. 3d at 455. Here, the Court finds that transfer, in lieu of dismissal, is "in the interest of justice," for two reasons. 28 U.S.C. § 1406(a). First, this Court does not have personal jurisdiction over Defendant, meaning any default judgment as to Plaintiff's claims would be void. *See Sinoying Logistics Pte Ltd.*, 619 F.3d at 213; *see also Kaplan*, 2022 WL 2207263, at *3. Second, because this case has been pending for nearly three years, and is based, in part, on contracts signed in 2019, dismissal could preclude Plaintiff

18

from refiling his claims in the proper forum because the applicable statutes of limitations may have run.[6] *See JDH Unlimited Inc.*, 808 F. Supp. 3d at 573.

Courts in the Second Circuit have found that a plaintiff's lack of diligence in "apply[ing] the straightforward venue provisions" or complying with the applicable limitations period militates in favor of dismissal, rather than transfer. *Powell*, 2016 WL 8711210, at *7; *see Spar, Inc.*, 956 F.2d at 394–95. In this case, Plaintiff "should have known that New York was not a proper forum within which to bring an action against" a Delaware corporation with its principal place of business in California, whose only connection to New York is a possible business partnership that has no relationship to the claims in the amended complaint. *Japan Press Serv., Inc. v. Japan Press Serv., Inc.,* No. 11-CV-5875 (SJF) (ETB), 2013 WL 80181, at *15 (E.D.N.Y. Jan. 2, 2013); *see also* R. & R., ECF 16, at 3, 6 n.1; May 6, 2025 ECF Order & Order to Show Cause; Jan. 14, 2026 ECF Min. Entry & Order. That said, "the functional purpose of 28 U.S.C. § 1406(a) is to eliminate impediments to the timely disposition of cases and controversies on their merits," rather than to boot cases for procedural noncompliance. *Minette*, 997 F.2d at 1027; *see id.* at 1025 ("Although a case should win only on its merits, it should not be lost on account of an ostensible procedural bar."). What is more, the Second Circuit has held that courts "may not dismiss a case *sua sponte* for improper venue absent extraordinary circumstances," especially where a plaintiff has not been given leave to amend their complaint to correct the defects in venue. *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999). Accordingly, the Court finds that the interest of justice is better

---

[6] The Court observes that the amended complaint fails to allege any dates in connection with Defendant's alleged actions or Plaintiff's alleged harm. *See generally* Am. Compl., ECF 11. Accordingly, the Court is unable to meaningfully consider whether any applicable statutes of limitations or repose have run as to any of Plaintiff's claims.

served by transferring the case to a district where Plaintiff has a shot at obtaining an enforceable judgment on the merits rather than by dismissing it outright.

For these reasons, the Court recommends transferring this case to the Central District of California in the interest of justice under Section 1406(a).

## B. Entry of Default

Notwithstanding the foregoing analysis, because both personal jurisdiction and venue are waivable defenses, a court may still adjudicate a plaintiff's default motion on its merits, even if such a judgment would be void or if the defendant's later appearance provides good cause to vacate it. *See Kaplan*, 2022 WL 2207263, at *2–3; *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 108 (E.D.N.Y. 2014) (noting that "proper venue is not essential to a valid judgment" (quotation marks omitted)); *see also Shah v. Netflix, Inc.*, No. 24-CV-6925 (RA), 2025 WL 2793703, at *7 (S.D.N.Y. Sept. 30, 2025) (observing that district courts may assume personal jurisdiction in order to assess a case's merits in certain circumstances (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 347 (2d Cir. 2018) (Calabresi, J., concurring))). Accordingly, the Court assesses whether entry of a default judgment is appropriate as to the two claims on which Plaintiff has moved. For the reasons discussed below, the Court recommends that Plaintiff's motion for default judgment should be denied, without prejudice to renew in the Central District of California should the case be transferred.

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of a default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-

20

defaulting party would suffer as a result of the denial of the motion for default

judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.* ("*Duce Constr. Corp.*"), No.

02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron*

*Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance,

whether the failure to follow a rule of procedure was a mistake made in good faith and

whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10

F.3d at 96.

In this case, although some of the *Enron Oil* factors weigh in Plaintiff's favor,[7] the

Court finds that entry of a default judgment is not warranted because, as explained

---

[7] Specifically, Defendant's failure to respond or otherwise appear in this action supports a finding of willfulness. The Court notes that Plaintiff has filed adequate proof of service as to FitForBucks, a Delaware corporation, by delivering the summons and complaint to the company's registered agent for service of process at the time of service — Business Filings Incorporated — as permitted by Delaware law. *See* Aff. of Serv., ECF 6-1; Del. Code Ann. tit. 8, § 321(a); *NYQF Inc. v. Sigue Corp.*, 781 F. Supp. 3d 104, 116 (E.D.N.Y. 2025) (discussing proper service under Delaware law). Defendant failed to respond within 21 days of service. *See* Aff. of Serv., ECF 6-1; Sherman Decl., ECF 25-2, ¶ 7. Plaintiff avers that following service of the original complaint, Defendant "disappeared from the Delaware corporate registry," such that service of the amended complaint could not be effectuated on the same registered agent, an event that Plaintiff characterizes as an "apparent attempt to evade this litigation." Sherman Decl., ECF 20-2, ¶¶ 3, 5. *But see* Del. Dep't of State, Div. of Corps., Corporation & Business Entity Database Search, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx/ (last visited July 6, 2026) (indicating that Fit For Bucks Corporation's registered agent is A Registered Agent, Inc., 8 The Green, Ste A, Dover, DE 19901); *see also NYQF Inc.*, 781 F. Supp. 3d at 116 n.3 (taking judicial notice of information on the Delaware Department of State, Division of Corporations website). Defendant further failed to respond after Plaintiff moved for default judgment and Plaintiff sent Defendant notice of the motion at Defendant's last known business address. *See* Sherman Decl., ECF 25-2, at 3 (certifying that all default judgment documents were sent to Defendant on February 6, 2026, via certified mail to Defendant's last known business address, 4169 Via Marina #206, Marina Del Rey, CA 90292); *see also* Req. for Certificate of Default, ECF 20, at 3 (certifying that a copy of the request for a certificate of default was sent to Defendant on July 1, 2025, via U.S. mail to Defendant's last known registered agent and last known business address). In light of Defendant's failure to respond, notwithstanding provision of notice multiple times regarding this proceeding, the Court weighs this factor in favor of default. *See Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-0946 (JS) (AKT), 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015). As to prejudice, the Court finds that "there is no indication that requiring Plaintiff[] to take further steps . . . would be effective in eliciting a response from Defendant[ ]." *Duce Constr. Corp.*, 2003 WL 1960584, at *3. Accordingly, this factor also weighs in favor of default.

21

below, Plaintiff's allegations fail to establish a claim as to the bases for liability on which Plaintiff has moved for a default judgment.

Whether a plaintiff has adequately established its asserted claims goes to the second *Enron Oil* factor, "whether [the] defendant has a meritorious defense." *Duce Constr. Corp.*, 2003 WL 1960584, at *2. "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Where, as here, Defendant has entirely failed to respond to the complaint or otherwise appear in the case, courts are often "unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013).

Weighing the meritorious defense factor in favor of default presumes, however, that the plaintiff has "demonstrate[d] that the allegations set forth in the complaint state valid claims." *United States v. McDermott*, No. 12-CV-4440 (DRH) (AKT), 2014 WL 1272566, at *4 (E.D.N.Y. Feb. 14, 2014), *report and recommendation adopted*, 2014 WL 917267 (E.D.N.Y. Mar. 10, 2014). This is because "a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Said v. SBS Elecs., Inc.*, No. 08-CV-3067 (RJD) (JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *report and recommendation adopted as modified*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010); *see Frank Brunkhorst Co. v. Castellini*, No. 17-CV-2324 (AMD) (ST), 2018 WL 1377302, at *2 (E.D.N.Y. Mar. 19, 2018) (explaining that a party moving for default judgment must

22

establish that "on the law it is entitled to the relief it seeks, given the facts as established by the default" (quotation marks omitted)). Simply "because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Community Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). Put differently, the Court cannot weigh this factor in Plaintiff's favor if the allegations of the complaint are insufficient to plead Defendant's liability in the first place.

For the reasons set forth below, the Court recommends denying Plaintiff's motion for default judgment because, even taking Plaintiff's factual assertions as true, Plaintiff has failed to adequately state a valid cause of action against Defendant FitForBucks as to the claims on which Plaintiff has moved.

### C. Liability

Plaintiff has chosen to proceed on two of the claims in the amended complaint in this default posture, "having withdrawn the federal and state securities fraud claims." Mem., ECF 25-1, at 1. Specifically, Plaintiff seeks a default judgment on the basis of the breach of contract and unjust enrichment claims. *Id*. at 1, 5, 6; *see* Am. Compl., ECF 11, ¶¶ 30–34, 40–45. For the reasons discussed below, the Court finds that Plaintiff has not pled sufficient facts to establish Defendant FitForBucks' "liability as a matter of law" on these claims. *Romanowicz*, 577 F.3d at 84.

*1. Breach of Contract*

To state a claim for breach of contract under California law,[8] the plaintiff must show "'(1) the existence of a contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages.'" *Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 785 (S.D.N.Y. 2025) (quoting *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 872 (N.D. Cal. 2015)).

In this case, Plaintiff's amended complaint alleges that he and FitForBucks entered into the SAFE Agreement in February 2019, whereby Plaintiff "provided a $250,000 loan to FitForBucks," and which contract "requires conversion of the $250,000 loan into equity upon a liquidity event or repayment upon dissolution of the company." Am. Compl., ECF 11, ¶¶ 31–32; *see* Mem., ECF 25-1, at 5. Plaintiff further asserts that FitForBucks "breached the SAFE Agreement by failing to notify Plaintiff of liquidity and/or dissolution events which occurred and triggered a repayment requirement of the $250,000 SAFE amount." Am. Compl., ECF 11, ¶ 33. As discussed above, the SAFE Agreement, which is attached to and incorporated into the amended complaint by reference, defines a "liquidity event" as "a change of control or an initial public offering," and defines a "dissolution event" as "(i) a voluntary termination of

---

[8] Because the contract at issue contains a California choice-of-law clause, the Court analyzes Plaintiff's claims arising out of the SAFE Agreement under California law, notwithstanding Plaintiff's citation to New York law in his memorandum. *See* Am. Compl., ECF 11, at ECF p. 23 ("All rights and obligations hereunder will be governed by the laws of the State of California, without regard to the conflicts of law provisions of such jurisdiction."); *see also* Mem., ECF 25-1, at 5–7. Under New York law, the general rule is that "'courts will generally enforce choice-of-law clauses and that contracts should be interpreted so as to effectuate the parties' intent.'" *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 472 (2d Cir. 2022) (quoting *Ministers & Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466, 470 (2015)), *certified question accepted sub nom. Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 39 N.Y.3d 960 (2022), and *certified question answered sub nom. Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 41 N.Y.3d 462 (2024).

operations, (ii) a general assignment for the benefit of the company's creditors or (iii) any other liquidation, dissolution or winding up of the company (excluding a liquidity event), whether voluntary or involuntary." SAFE Agreement, ECF 11, at ECF p. 21 (capitalization modified) (emphasis omitted).

To state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019); *see Jackson v. Nassau County*, 552 F. Supp. 3d 350, 364 (E.D.N.Y. 2021) ("'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks and alterations omitted)).

Here, Plaintiff pleads no particularized facts in his amended complaint from which to infer that a "liquidity and/or dissolution event[]" actually happened. Am. Compl., ECF 11, ¶ 33. He has offered only conclusory assertions that FitForBucks "breached the SAFE Agreement by failing to notify Plaintiff of liquidity and/or dissolution events which occurred." *Id.* Plaintiff offers no factual allegations to substantiate whether or when, if at all, such an event occurred, nor where or how

25

Plaintiff became aware of Defendant's failure to notify Plaintiff of such an event.[9] *See*

*generally id.* Accordingly, Plaintiff has not plausibly pleaded that the purported "event[]

which occurred" was either a liquidity event — which would trigger the conversion of

the loan into equity — or a dissolution event — which would trigger repayment of the

loan. *Id.* ¶ 33; *see also* SAFE Agreement, ECF 11, at ECF pp. 12–13 (describing the legal

effects of a liquidity event versus a dissolution event).

For the reasons set forth above, Plaintiff's breach of contract claim fails to

adequately allege Defendant's liability as a matter of law.

### 2. *Unjust Enrichment*

Plaintiff has likewise failed to state an unjust enrichment claim. Plaintiff alleges

that Defendant FitForBucks was unjustly enriched at Plaintiff's expense when Plaintiff

---

[9] Of course, as discussed above, the Court cannot and does not, in the default posture, consider allegations not contained in the amended complaint or documents integral to it. *See J & J Sports Prods., Inc. v. Boodram* ("*Boodram*"), No. 18-CV-5087 (NGG) (SMG), 2019 WL 4463352, at *3 (E.D.N.Y. Sept. 18, 2019) (collecting cases). However, the Court observes that Plaintiff repeatedly asserts across his other papers that FitForBucks dissolved *following the filing of this lawsuit*; this assertion causes the Court to further question what, if any, dissolution event forms the basis for Plaintiff's breach of contract claims. *See* Mem., ECF 25-1, at 3 (arguing that "[a]fter being served with this lawsuit [in January 2024], FitForBucks was removed from the Delaware corporate registry" and that "[t]his removal constitutes a 'Dissolution Event' under Section 2 of the SAFE Agreement"); Sherman Decl., ECF 20-2, ¶ 5 (stating that Defendant's disappearance from the Delaware corporate registry following service of the original complaint "confirm[s] defendant's dissolution and apparent attempt to evade this litigation"); *cf.* OTSC Resp., ECF 18, at 2–3 (noting that "[d]espite its removal from the Delaware corporate registry, FitForBucks continues to maintain an active business presence"). Even if the Court could consider the assertions in these filings in assessing the default motion, Plaintiff provides no support for the proposition that Defendant's apparent disappearance from the Delaware corporate registry constitutes a dissolution event, especially in light of Plaintiff's later claims that the FitForBucks app remains operational. *See generally* Mem., ECF 25-1; *compare* Sherman Decl., ECF 20-2, ¶ 5, *with* OTSC Resp., ECF 18, at 2–3; *see also* SAFE Agreement, ECF 11, at ECF p. 21 (defining dissolution event).

"invest[ed] $500,000 based on FitForBucks' misrepresentations."[10] Am. Compl., ECF 11, ¶ 42. The alleged misrepresentations include statements by Kats, on behalf of FitForBucks, "that FitForBucks had sufficient capitalization and business growth to achieve financial breakeven or an exit event before the operating capital runs out" and that "FitForBucks [had] a valuation of $10 [million], allegedly supported by some undetermined California State entity, without providing any written support." *Id.* ¶ 13.

Under California or Delaware law,[11] a claim for unjust enrichment is unavailable if the parties' dealings are governed by a valid contract. *See Hameed v. IHOP Franchising LLC*, 520 F. App'x 520, 522 (9th Cir. 2013) (holding that appellant's claim was properly dismissed because "unjust enrichment claims cannot proceed when the parties have a valid contract regarding the same subject matter"); *Metcap Sec. LLC v. Pearl Senior Care, Inc.*, No. C.A. 2129-VCN, 2009 WL 513756, at *5 (Del. Ch. Feb. 27, 2009) (observing that Delaware "courts will engage in the threshold inquiry of determining whether a contract already governs the parties' relationship; if it does, the contract provides the measure of the plaintiff's right"), *aff'd*, 977 A.2d 899 (Del. 2009).[12] *But see RCS Creditor Tr.*

---

[10] The Court notes that although Plaintiff's memorandum of law argues that his unjust enrichment claim is premised solely on Plaintiff's "separate $250,000 investment to purchase 325,000 shares of FitForBucks common stock," beyond the $250,000 transferred under the SAFE Agreement, the Court is required to analyze Plaintiff's claims as pleaded in the amended complaint. Mem., ECF 25-1, at 6; *see Boodram*, 2019 WL 4463352, at *3.

[11] Because Plaintiff's unjust enrichment claim is based on his $500,000 investment, which was consummated across the SAFE Agreement and Stock Purchase Agreement, the Court analyzes the claim in accordance with the choice-of-law provisions in those contracts: disputes arising out of the SAFE Agreement are governed by California law, while those arising out of the Stock Purchase Agreement are governed by Delaware law. *See* Am. Compl., ECF 11, at ECF pp. 23 (SAFE Agreement), 27 (Stock Purchase Agreement); *see supra*, note 8.

[12] The same is true under New York law. *See, e.g., Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (noting that the existence of a valid and binding contract governing the subject matter at issue in a particular case precludes an unjust enrichment claim).

*v. Schorsch*, Civil Action No. 2017-0178-SG, 2018 WL 1640169, at *7 (Del. Ch. Apr. 5, 2018) (noting that the existence of a contract does not necessarily bar an unjust enrichment claim if "the claim is premised on an allegation that the contract arose from wrongdoing," such as fraud, and the defendant "has been unjustly enriched by the benefits flowing from the contract").

Plaintiff does not argue that the agreements underlying Plaintiff's $500,000 investment in FitForBucks are invalid contracts, and the Court does not see a basis for concluding that they are. An enforceable contract requires essentially the same elements under both California and Delaware law. "Under California law, in order to form a valid and enforceable contract, it is essential that there be: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and, (4) a sufficient consideration." *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007). In Delaware, the elements are: "'(1) the intent of the parties to be bound, (2) sufficiently definite terms, and (3) consideration.'" *FriendFinder Networks Inc. v. Penthouse Glob. Media, Inc.*, No. CV 12436-VCMR, 2017 WL 2303982, at *15 n.218 (Del. Ch. May 26, 2017) (quoting *Otto v. Gore*, 45 A.3d 120, 138 (Del. 2012)). In both jurisdictions, a contract in the form of a signed writing presumptively evidences the parties' consent to and intent to be bound by the terms of the contract. *See Rutherford v. Ekta Hosp.*, No. EDCV-20-408 JGB SHKx, 2021 WL 4571986, at *2 (C.D. Cal. July 23, 2021) ("'In the absence of fraud, mistake, or another vitiating factor, a signature on a written contract is an objective manifestation of assent to the terms set forth there.'" (quoting *Rodriguez v. Oto*, 212 Cal. App. 4th 1020, 1027 (Cal. Ct. App. 2013)); *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1230 (Del. 2018).

Here, Plaintiff does not contend that any of these elements are unsatisfied. *See generally* Am. Compl., ECF 11; Mem., ECF 25. Instead, the Court understands Plaintiff to

28

challenge the validity of the contracts on the basis that he signed them because of Kats's misrepresentations. *See* Am. Compl., ECF 11, ¶¶ 13, 42; *see also* Restatement (Second) of Contracts § 163 (1981) (explaining that a contract is void *ab initio* when entered into on the basis of material misrepresentations). Such an allegation "sounds in fraud," which means it is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Kalaj v. Kay*, No. 21-CV-4395 (EK) (JRC), 2023 WL 4564795, at *11 (E.D.N.Y. July 17, 2023) (quotation marks omitted), *appeal dismissed*, No. 23-1173-cv (2d Cir. Oct. 18, 2023). Courts in this circuit are bound by Second Circuit law interpreting when Rule 9(b) applies, "regardless of the source of the substantive law giving rise to those claims." *Tyman v. Pfizer, Inc.*, No. 16-CV-6941 (LTS) (BCM), 2017 WL 6988936, at *8 (S.D.N.Y. Dec. 27, 2017) (collecting cases), *report and recommendation adopted*, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018).

Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Importantly, "conclusory allegations that [the] defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982). Rather, Rule 9(b) requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Mere "[s]weeping references" to a defendant's fraudulent actions "will not satisfy the particularity requirements of Rule 9(b)." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579–80 (2d Cir. 2005) (quotation marks omitted).

29

Here, Plaintiff identifies the speaker — Kats — but his allegations are otherwise too conclusory to meet Rule 9(b)'s heightened pleading standards. Plaintiff's amended complaint does not allege where or when "Kats declared to Plaintiff" that "FitForBucks had sufficient capitalization and business growth to achieve financial breakeven or an exit event before the operating capital runs out," or that "FitForBucks [had] a valuation of $10 [million], allegedly supported by some undetermined California State entity, without providing any written support." Am. Compl., ECF 11, ¶ 13. Allegations that "merely summarize and draw conclusions from . . . actual statements" and do not allege any "specifics as to when or in what context they were made" do not satisfy Rule 9(b). *Newton v. Meyer*, No. 22-CV-0540 (JPC), 2023 WL 2563115, at *12 n.17 (S.D.N.Y. Mar. 17, 2023). Moreover, Plaintiff has failed to allege facts to explain how the statements were fraudulent, beyond alleging that "FitForBucks, through Kats, knew that these representations were false when made, or was reckless in not knowing, given Kats'[s] position as founder, controlling shareholder, CEO, and Chairman of the Board of Directors." Am. Compl., ECF 11, ¶ 21. Accordingly, because Plaintiff has not pleaded the elements of fraud with particularity, the amended complaint does not provide allegations from which to conclude that the contracts underlying the sale of $500,000 in FitForBucks stock, or rights to such stock, are invalid.

For all of these reasons, Plaintiff has failed to allege facts from which to conclude that the contracts underpinning the transfer of $500,000 were invalid. Accordingly, the Court recommends denying Plaintiff's motion for default judgment on the unjust enrichment claim, since "unjust enrichment claims cannot proceed when the parties have a valid contract regarding the same subject matter." *Hameed*, 520 F. App'x at 522.

## CONCLUSION

The Court respectfully recommends that this case be transferred to the Central District of California, and that Plaintiff's motion for default judgment be denied, without prejudice to renew in that district. In the alternative, should the case not be transferred, the Court respectfully recommends that Plaintiff's motion for default judgment be denied.

\*     \*     \*     \*     \*

This report and recommendation will be filed electronically and a copy sent by mail to Defendant. As a courtesy, the Court also respectfully directs Plaintiff to provide a copy of this report and recommendation to Defendant forthwith and to file proof of same by July 13, 2026. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Natasha C. Merle at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated:  Brooklyn, New York
         July 6, 2026

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

31